Viola Samms, Plaintiff-Appellee, v. Chicago Title and Trust Company, John Zapantis, Defendants-Appellees, People's National Bank of Chicago, Defendant-Cross-Complainant-Appellee, and United States of America, Defendant-Appellant.

Gen. No. 45,902.

Opinion filed February 10, 1953. Released for publication March 24, 1953.

OTTO KERNER, JR., United States Attorney, of Chicago, for appellant; JOHN PETER LULINSKI, and WALTER

F. J. Krawiec, Assistant United States Attorneys, both of Chicago, of counsel.

Shaffer, Seelig, Mandel & Shapiro, of Chicago, for appellee; George L. Shapiro, and David E. Malfar, both of Chicago, of counsel.

Mr. Justice Schwartz delivered the opinion of the court.

This is a suit to foreclose a mortgage, in which a controversy arose between the United States of America, defendant claiming a lien for taxes, and the Peoples National Bank of Chicago, defendant-cross-complainant, assignee of a claim for mechanic's lien. The decree approves a master's report finding the respective positions of the parties as follows: first, the mechanic's lien holder to the extent of the enhancement of value by reason of the improvement; second, the mortgage indebtedness; and third, the tax claim of the United States.

The Government acknowledges that its lien position is subordinate to that of the mortgage by reason of the fact that notice of its claim was not filed with the recorder of deeds until subsequent to the making of the mortgage, but contends that it is superior to that of the mechanic's lien holder whose claim did not arise until after the filing of the notice of the government's claim. The basis of the government's argument is that the Act of Congress establishing a lien for federal taxes is controlling; that claims for taxes are prior liens under circumstances such as here exist, except only as to the prior mortgage; and that the mechanic's lien, not being within the provisions of that law, cannot take precedence over the government's lien. The position taken by the lien holder is that under the statutes of Illinois its lien is superior to that of the mortgage; that the lien of the United States being subordinate to

that mortgage, it is subordinate to everything declared by the law of Illinois to be superior to the mortgage.

In the determination of this question certain long established principles are applicable. In *McCulloch v. Maryland,* 4 Wheat. 316 [17 U. S.] (4 Law Ed.), CHIEF JUSTICE MARSHALL wrote his memorable decision holding that the Constitution of the United States and the laws made in pursuance thereof were supreme over the laws and constitutions of the respective States. From this has been derived the principle that the Federal Government, in the exercise of its right to levy and collect taxes, may determine the nature and extent of the lien to be imposed upon the proper objects of its tax legislation, and when it has done so, the law of no State may defeat its purpose. *United States v. City of Greenville,* 118 F. (2d) 963, 965; *Michigan v. United States,* 317 U. S. 338; *United States v. Texas,* 314 U. S. 480; *Spokane County v. United States,* 279 U. S. 80; *United States v. Reese,* 131 F. (2d) 466. In *United States v. Reese, supra,* the validity of the Illinois statute making state liens for taxes paramount to all others was under consideration. The court, recognizing the supreme taxing power of the Federal Government, said: ''Ordinarily it would seem obvious that if a subsequent purchaser does not take free of an inchoate unliquidated tax statutory lien it would follow that a subsequent acquirer of a lien could not take free thereof. But this postulate obviously omits all consideration of the nature of the government's lien, of its constitutional power to levy and collect taxes and, finally, of the legislation which Congress has enacted pursuant to such power which has been declared valid by the Supreme Court.'' The tax may seem unjust and the method of subjecting property to its payment appear to be unfair, but if done pursuant to duly enacted legislation, there is no recourse except as Congress may provide. We must therefore look to the acts

of Congress and the interpretations thereof for solution of the issue in the case before us.

Prior to 1913 the Act of Congress provided without qualification that any delinquent tax should be a lien in favor of the United States upon all property of the taxpayer from the time the assessment list was received by the collector, without the requirement of notice of any kind. (Ch. 166, 37 U. S. Stat. L. 1016.) In *United States v. Curry* (D. C.), 201 Fed. 371 (1912) it was held that despite the obvious injustice and hardship the enforcement of such a lien might impose on a bona fide purchaser and mortgagee without notice, the lien of the Government for taxes was good as against them. The court there referred to *United States v. Pacific Railroad* (C. C.), 1 Fed. 97 (1880) where innocent purchasers, not knowing of any claim the Government might have, were nevertheless subjected to loss by reason of this uncompromising exercise of taxing power. In 1913 Congress, for the purpose of avoiding the harsh effects attendant upon the exercise of this power, amended the Act by adding a proviso that a lien for taxes should not be valid as against mortgagees, purchasers or judgment creditors who were such prior to the filing of a notice of lien by the Government (as to this county, in the office of the Recorder of Deeds). The present law is substantially the same, but pledgees of stock prior to the filing of notice of lien by the Government are also excepted. (Secs. 3670-2, Title 26, U. S. Code.)

The priority of a federal tax lien as against a state tax lien was upheld in *Michigan v. United States,* 317 U. S. 338. The court said, "it is not debatable that a tax lien imposed by a law of Congress, as we have held the present lien is imposed, cannot, without the consent of Congress, be displaced by later liens imposed by authority of any state law or judicial decision." In the light of this established superiority of the federal

417

taxing power, what is the proper construction to be placed upon that proviso now known as section 3672 of Title 26 of the United States Code? It is suggested that since the federal statute does not expressly announce the priority of federal liens, and since it expressly recognizes the priority of four specified classifications of lien holders, the inference is justified that no priority should be accorded to a federal lien merely because prior in time, even though notice thereof is placed of record in the manner provided by statute. Considering the history of the legislation and the object which it sought to effect, Congress must have intended to preserve the supremacy of the tax lien, except as explicitly qualified by its Act. A lien not superior in point of time and inferior to all other liens which had not been expressly stated in the qualifying language used could well have become of little or no value. In *United States v. City of Greenville,* 118 F. (2d) 963, the State of South Carolina asserted the priority of its tax lien over that of the Federal Government. The court observed: ''The thing of significance to be noted is, not that the statute does not give priority to the federal tax, but that it does not grant permission to the states to interfere with a lien of the federal government * * * .'' This construction was adopted in *United States v. Security Trust & Savings Bank,* 340 U. S. 47, in the concurring opinion of MR. JUSTICE JACKSON: ''My conclusion from this history is that the statute excludes from the provisions of this secret lien those types of interests which it specifically included in the statute *and no others.*'' (Italics added.) An Illinois case which supports this position is *Republic National Life Insurance Co. v. Hedstrom,* 346 Ill. App. 555, which arose on a state of facts almost identical with those of the instant case. The insurance company brought suit to foreclose a mortgage against the owner of the property. A tenant

in possession claimed a mechanic's lien against the property, and the Federal Government claimed a tax lien. The order in time was as it is in the instant case—mortgagee first, United States second, and mechanic's lien third. The trial court held that the mortgagee had first priority, the mechanic's lien holder an equal status to the extent of his debt, and the United States third. The Appellate Court for the Second District, relying upon the authorities cited in the instant case, reversed the decree of the lower court and accorded first priority to the mortgagee and then placed the Government ahead of the mechanic's lien. It did so on the theory that tax obligations are by nature superior to private obligations, and that the taxing power of the Federal Government is superior to the power of a State to create paramount state or private obligations.

 The mechanic's lien holder contends that the *Republic* case is distinguishable from the instant case. The decree there placed the mechanic's lien holder and the mortgagee on a parity, while the decree in the instant case placed the mechanic's lien ahead of the mortgage to the extent of the enhancement in value of the property. This is a distinction not germane to the issue. The central question here is whether the mechanic's lien can be placed ahead of the federal tax lien, and not the standing of a mechanic's lien in relation to a mortgagee under state law. Nor can we make any distinction based on the restriction of the mechanic's lien to an amount equivalent to the enhancement in value of the property. The federal law does not make such provision, and we cannot write it into sec. 3672. It is a federal and not a state question. *United States v. Security Trust & Savings Bank*, 340 U. S. 47. The distinction made by the mechanic's lien holder does not diminish the strength of the *Republic* case as authority for the Government's position in the instant case.

419

█ It is argued that since the Government has subordinated itself to the prior recorded mortgage in accordance with section 3672, it has thereby subordinated itself to everything which the laws of Illinois place ahead of the mortgage. The mechanic's lien holder relies upon *Ferris v. Chic-Mint Gum Co.*, 14 Del. Ch. 232, 124 Atl. 577. There is no doubt that this case is authority for its position, but as pointed out in the *Republic* case, it is against the weight of authority. Its effect is to permit States and private parties to subordinate the paramount taxing authority of the Federal Government by creating interests superior to mortgages and the other types of liens specified in section 3672 of the Revenue Code. CHIEF JUSTICE TAFT commented on the *Ferris* case in *Spokane County v. United States*, 279 U. S. 80, 91, where he said:

"The Chancellor [in the Ferris case] allowed the claims in order of the state, the mortgagee, and the United States, holding that 'when the government agreed by section 3186 to take rank after the mortgagee, it must necessarily follow that it is subordinate in rank to those who are superior to its immediate senior.' The Chancellor observed that his conclusion arose out of the peculiar facts of the case, and that it was unnecessary for him to venture into the broad field of constitutional law. Without concurring in the conclusion of the Chancellor, it is enough to say that, as there is no such third creditor here, the case is not in point. Moreover, it is contended by the government that the relative priorities could have been maintained in that case by setting apart sufficient funds to pay the mortgagee before paying the federal taxes and then providing for payment of the state tax out of the sum so set apart."

█ The mechanic's lien holder vigorously argues the inequity of the government's position in jeopardiz-

ing the security of mechanics and material men who, by their labor and material, enhance the value of mortgage property. In the matter of taxes, however, this court is not permitted, on equitable considerations, to subordinate a lien for taxes fixed by an Act of Congress. The power to tax imposes hardships in many cases, but the power is none the less necessary. For example, homestead rights conferred by state statutes are not exempted from federal tax liens. However, in view of our ultimate conclusion in this case, it is not the mechanic's lien holder who would be affected by our interpretation of the law, but the mortgagee.

██ It is also argued that as the government's claim for taxes is subordinate to the mortgage, and as the mortgagee's interest was impressed with a lien in favor of the mechanic's lien holder, therefore, the tax claim is subordinate to the mechanic's lien. It appears incongruous to the mechanic's lien holder that it should be allowed a claim prior to the mortgage, but subordinate to that of the Government, and it argues that the effect of this finding is to reduce the mortgagee's preference to the extent of the mechanic's lien. This incongruity arises by virtue of our state law and not by virtue of the federal enactment. If there had been a mechanic's lien Act of Congress so providing, then perhaps this court would be faced with the question of construing the two acts, but acknowledging, as we must, the supremacy of the federal law, its application must be made even though a state law creates the incongruity. Under a provision of the mortgage, the mortgagee could have paid the mechanic's lien claim, which would then have become part of the mortgage indebtedness, and thereby superior to the tax claim. It is argued, in substance, that this gives the mechanic's lien a status of like priority over the tax claim. In this case, the mortgagee did not pay the mechanic's lien claim, and whether or not such subsequent ad-

vancement made by a mortgagee takes precedence under section 3672 is not before us for determination.

█ The mechanic's lien holder makes a point on the pleading. It is contended that as the Government filed no answer to the cross-complaint of the mechanic's lien claimant, the averments of the cross-complaint are admitted. There is no merit in this point. Sec. 9, ch. 82, Smith-Hurd's Ill. Rev. Stat. (1951) [Jones Ill. Stats. Ann. 74.09] provides that lien claimants may, upon application, become defendants and enforce their liens by answer to a bill or petition, and may contest each other's rights, without any formal issue of record.

█ It is our conclusion that the claim of the mechanic's lien holder in this case is not within the meaning of section 3672 and is subordinate to the lien of the government's tax claim. This priority of the government's lien, if only the mechanic's lien were here involved, would be full and complete as to all proceeds derived from the sale of the property resorted to. However, where, as in this case, there is a mortgage which is a lien prior to that of the government's tax claim, then the Government for satisfaction of its lien can only resort to those proceeds from the sale of the property which are in excess of the mortgage indebtedness. Therefore, the priority of the government's lien in the instant case is only as to that excess. The mechanic's lien claimant by state law is given a lien prior to that of the mortgagee, which in effect means that it may resort to the proceeds from the sale of the property which are applicable to payment of the mortgage indebtedness. This is the inevitable result of the application of the Act of Congress and of the state law.

Decree reversed and cause remanded, with directions to amend the decree in accordance with the conclusions of this opinion.

*Decree reversed and cause remanded, with directions.*

ROBSON, P. J., concurs.

TUOHY, J., took no part.